# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOYCE R. GARLAND-SASH,

                Plaintiff,

        v.

THE UNITED STATES OF AMERICA,
JAMES T. BLACKFORD, PETER
MERRIGAN, BERNARD RAY, THOMAS
LARSON, PAUL WODESCHICK, ED
JOHNSON, JANICE FINK, MULLINS,
DEANNA PRISCO, TIM MURPHY, DAVE
MULCAHY, KEVIN MULCAHY,
ANTHONY MACCHIA, KEN
GREENBLATT, TOM FRANKELIS,
MEGAN SACKS, DEFENDANTS DOES #1
TO #10, THE CLOSTER POLICE
DEPARTMENT, JEROME IKALOWYCH,
DENNIS KAINE, DEFENDANT DOES #1
TO #16,

                Defendants.

Civil Action No.08-CV-3609 (SDW)

**OPINION**

August 6, 2009

**WIGENTON**, District Judge.

Plaintiff pro se Joyce Garland-Sash ("Sash") has filed a Complaint against the United States, the Closter, New Jersey Police Department and two of its officers, and over 16 named probation officers and supervisors from the Southern District of New York and the District of New Jersey. The probation officers and Closter police officers are named in their individual capacities. Sash alleges that the probation officers, in the presence of the Closter police officers, violated her rights under the Fourth and Fifth Amendments to the United States Constitution by conducting a "premeditated, Armed Home Invasion," searching her home, and seizing many

personal items.  All Defendants have moved to dismiss the Complaint on various grounds.  Oral argument on the pending motions was held on July 22, 2009.

## I.    <u>Factual Background</u>

On September 4, 2002, Eliot Sash was arrested for possession of thousands of counterfeit federal, state, and local law-enforcement identification documents, badges, and the equipment necessary to fabricate them.  While released on bail, Mr. Sash was arrested again, this time for possession of counterfeit UPC bar codes for DVD movies.  *See United States v. Sash*, 396 F.3d 515, 517 (2d. Cir. 2005) (affirming District Court's sentencing enhancement but remanding for re-calculation of the term of supervised release).  Mr. Sash pleaded guilty to two Class C felonies.  *Id*.  He was sentenced to a term of imprisonment on August 17, 2005.  As a condition of his supervised release, Mr. Sash was not to possess any law enforcement equipment, including badges and uniforms.  (Am. Compl. ¶ 18.)  He was also subject to searches of his person, residence, and automobile "as deemed necessary by the United States Probation Department." (*Id.*)  Plaintiff Sash is Mr. Sash's wife and lives with him in Closter, New Jersey.  Mrs. Sash was not a party to the special conditions of Mr. Sash's supervised release and did not sign a "third party risk waiver" as outlined in the United States Probation Department manual.  (Am. Compl. ¶¶ 19–20.)  Mrs. Sash alleges that she never acknowledged that she might be affected by the special conditions of her husband's supervised release and was not informed by Defendants that the special conditions existed.  (*Id.*)

On March 3, 2006, Probation Officers Fink and Mullins went to the Sash residence to conduct a routine home visit.  (*Id.*  ¶ 21.)  Mrs. Sash verbally protested to a search, but her husband consented.  (*Id.* 21–22.)  Officer Fink asked Mr. Sash if he had any police equipment. He admitted that he did, showed Fink his N.Y.P.D. uniforms, and admitted that there were

additional items in the home.[1]  (*Id.*)  On March 6, 2006, Probation Officer Fink returned to the Sash home with additional probation officers to execute a search for any prohibited items.  (Am. Compl. ¶ 22.)  Mr. Sash was not home at the time (*Id.* ¶ 22) and Mrs. Sash did not consent to the search (*Id.* ¶ 23).  After arriving at the Sash home, the probation officers requested the assistance of the Closter Police Department to respond to issues related to the safety and welfare of the Sash children.  (Def. Closter Br. Ex. D.)  Closter Officers Ikalowych and Kaine entered the Sash home as Ms. Sash was leaving to drop her children off at school.  (Am. Compl. ¶ 27.)  The officers were at the residence for approximately one hour and had no further involvement in the matter.

During the search, the probation officers found and seized numerous items violating Mr. Sash's conditions of supervised release.  Mrs. Sash alleges that items belonging exclusively to her were also seized, including her own N.Y.P.D. police uniforms, two computers, walkie-talkies, and other police novelty items.  (*Id.* ¶¶ 23–24, 28.)  Mr. Sash was found in violation of the terms of his supervised release and sentenced.  The Probation Department returned Mrs. Sash's computers on December 10, 2007.  (*Id.* ¶ 29.)  They returned three N.Y.P.D. uniform jackets and all but one of the walkie-talkies on January 3, 2008.  (*Id.* ¶ 29.)

Mrs. Sash filed a claim under the Federal Tort Claims Act ("FTCA") on January 4, 2008, which was denied on May 5, 2008.  (Am. Compl. Ex. A.)  She filed the current action on July 17, 2008.[2]

---

[1] Sash argues that these uniforms were authorized and not contraband because Sash and her husband are members of the Screen Actors Guild and have letters of permission to possess N.Y.P.D. uniforms.  (Am. Compl. ¶ 21.)

[2] Sash's original complaint was submitted to the Court on July 17, 2008 with an application to proceed without the prepayment of fees.  That request was denied and the case was terminated on September 18, 2008 for failure to pay the requisite filing fee.  Sash amended her complaint on October 29, 2008, and the case was reopened on November 14, 2008.

## II.    Jurisdiction and Venue

This Court has jurisdiction over Sash's §1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343.   The Court exercises pendent jurisdiction over the New Jersey-based claims.   *See* 28 U.S.C. § 1367.  Because the events that give rise to Sash's claims occurred in this District, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## III.    Motion to Dismiss Standard

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holding Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556–57, 570) (internal citations omitted).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. 1937 at 1950.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Id.* at 1950, the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).

## IV.   Discussion

Because Sash appears *pro se*, we liberally construe the complaint and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name."  *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999).  Here, the Complaint is clear that Sash's primary claims are for monetary compensation pursuant to 28 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) based on alleged violations of her Fourth and Fifth Amendment rights, as well as claims under the Federal Tort Claims Act, 28 U.S.C. §1346(b), for intentional and negligent infliction of emotional distress.

### A.   Claims pursuant to 28 U.S.C. § 1983 and *Bivens*

Sash has brought § 1983 and *Bivens* claims against the probation officers alleging that they engaged in a "premeditated Armed Home [i]nvasion, illegal, unreasonable, unconstitutional and warrantless search and seizure of her residence and property."  (Am. Compl. ¶¶ 5, 7.)  She

alleges this "invasion" was "taken under a premeditated armed threatening show of force . . . in violation of the Fourth and Fifth Amendments to the Constitution of the United States." (*Id.*) Sash also alleges a § 1983 claim against the Closter Police Department and Officers in their individual capacities for "refus[ing] to stop the premeditated Armed Home Invasion." (*Id.* ¶ 9.)

Sash's claims brought pursuant to § 1983 and *Bivens* must be dismissed for failure to file within the requisite statute of limitations.  The statute of limitations for § 1983 claims are borrowed from the law of the forum state.  *Weis-Buy Servs. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005).  Sash argues that the New York statute of limitations should apply because the search was planned in New York and the seized property was retained in New York.  Determining where the cause of action arises depends on where the "final significant event that is essential to a suable claim occurs." *Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co.*, 372 F.2d 18, 20 (3d Cir. 1966).  Here, the significant event is the search of Sash's home in New Jersey on March 6, 2006.  Hence, New Jersey's two-year statute of limitations for personal injuries applies.  *See* N.J. Stat. Ann. § 2A:14-2 (2000); *Montgomery v. De Simone*, 159 F.3d 120, 126 n.4 (3d. Cir. 1998) (New Jersey's two-year statute of limitations applies to § 1983 claims).  Therefore, the statute of limitations for Sash's § 1983 claims expired on March 6, 2008.  Because the original complaint was not filed until July 17, 2008, these claims are time-barred.  The same two-year statute of limitations applies to bar Sash's *Bivens* claims.  *See Napier v. Thirty or More Unidentified Fed. Agents, etc.*, 855 F.2d 1080, 1088 (3d Cir. 1988).  Accordingly, they are also dismissed.

The Complaint also appears to allege violations of Sash's constitutional rights against the United States under the Federal Tort Claims Act.  The FTCA permits claims against the United States for damages:

> for injury or loss of property, or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or employment,
> under circumstances where the United States, if a private person, would
> be liable to the claimant in accordance with the law of the place where
> the act or omission occurred.

28 U.S.C. § 1346(b) (2006).  Sash's constitutional claims against the United States are not cognizable under § 1346(b).  *See FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994) (holding that violation of plaintiff's fifth Amendment due process rights was not "cognizable" under § 1346(b) against the United States because "§ 1346(b) does not provide a cause of action for such a claim.").  Hence, these claims are dismissed.[3]

### B.  Qualified Immunity

Notwithstanding the statute of limitations, the probation officers argue that they also are immune from suit because their search of the Sash house and seizure of the police-related items and computers was reasonable under the circumstances.  We agree.  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known*.*"  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In *Saucier v. Katz*, 533 U.S. 194 (2001), The Supreme Court mandated a two-step process for determining whether a government official is entitled to qualified immunity.  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the

---

[3] Sash also alleges that the probation officers violated the United States Probation Manual because she was not notified of the risks of having her home searched or property seized without a warrant pursuant to her husband's condition of supervised release.  (Am. Compl. ¶ 29.)  A violation of internal guidelines does not result in a breach of duty cognizable under the Federal Tort Claims Act.  *See Jacobo v. United States*, 853 F.2d 640, 641 (9th Cir. 1988); *Kugel v. United States*, 947 F.2d 1504, 1508 (D.C. Cir. 1991).  Therefore, Sash's claim for a violation of the probation manual fails.

officer's conduct violated a constitutional right?"  *Saucier*, 533 U.S. at 201.  Second, the Court must determine whether the right was clearly established at the time it was allegedly violated. *Id*.  The Supreme Court recently downgraded this "rigid order of battle" from mandatory to advisory.  *Pearson*, 129 S. Ct. at 817–18 (holding that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.").  Instead, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*. at 818; *see Maldonado v. Fontanes*, 568 F.3d 263, 270 (1st Cir. 2009) (noting that "the utility of bypassing the first prong is particularly apparent '[w]hen qualified immunity is asserted at the pleading stage [because] the precise factual basis for the plaintiff's claim or claims may be hard to identify.'"  (quoting *Pearason*, 129 S. Ct. at 819)).

Under Federal law at the time of the March 6, 2006 search, a warrantless search of a probationer's home, supported by reasonable suspicion and authorized by a probation agreement, was reasonable within the meaning of the Fourth Amendment.  *United States v. Knights*, 534 U.S. 112 (2001); *see also Griffin*, 483 U.S. at 879 (holding that a warrantless search of a probationer's home pursuant to a regulation and upon reasonable suspicion that there is a violation of a release condition by possession of contraband, is reasonable under the Fourth Amendment).  Also at the time of the search, the Supreme Court had held that a warrantless search was reasonable upon the consent of only one of several inhabitants if officers possessed a reasonable belief that the individual consenting had common authority over the home.  *See Illinois v. Rodriguez*, 497 U.S. 177, 182 (1990).  In a case decided 16 days after the search of the Sash home, the Supreme Court altered this standard.  In *Georgia v. Randolph*, 547 U.S. 103

(2006), the Court held that a search was invalid under the Fourth Amendment when a physically-present occupant expressly objected to a search, notwithstanding the consent of a fellow occupant.  Sash argues that under *Randolph*, the search was unreasonable because she explicitly denied her consent and she was the only inhabitant present at the time of the search.  (Pl. Opp'n to Def. U.S. Mot. Dismiss 7.)  Sash concedes that if her husband were present, he would have been able to permit the search over her objections.  (*Id.*)  However, this Court must apply the law at the time the search was conducted.  *See Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004) ("[R]easonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.").  Applying *Rodriguez*, *Knights*, and *Griffin*, the search in this case was reasonable because Mr. Sash consented to the search through his supervised release agreement, admitted having contraband in the house, and had apparent common authority over the home.[4]

### C.  Emotional Distress Claims

Sash alleges negligent and intentional infliction of emotional distress against all Defendants.  (Am. Compl. ¶¶ 11–13, 33.)  As a threshold matter, Sash's claims of negligent and intentional infliction of emotional distress against the Closter Police Department and it's individual officers are time-barred under the New Jersey Tort Claims Act ("NJTCA").  According to the NJTCA, a "claimant shall be forever barred from recovering against a public entity or public employee if . . . [t]wo years have elapsed since the accrual of the claim."  N.J.

---

[4] The Complaint also includes a writ of mandamus pursuant to 28 U.S.C. § 1651(a) to return one walkie talkie and certain police novelty items belonging to Sash.  (Am. Compl. ¶ 2.)  This is not the appropriate relief because mandamus is an extraordinary writ and there are "other adequate means for her to obtain relief."  *In re Trader*, 285 Fed. Appx. 973, 973 (3d Cir. 2008).  However, this claim could be construed as a motion to return property pursuant to Federal Rule of Criminal Procedure 41(g).  Under Rule 41(g), "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  However, as addressed above, because this Court concludes that the search and seizure was not unlawful, this claims fails.

Stat. Ann. § 59:8-8 (2006).  Here, the search of Sash's home took place on March 6, 2006, and the statute of limitations for Sash's NJTCA claims expired on March 6, 2008.  Because the Complaint was not received until July 17, 2008, all tort claims against the Closter police officers are time-barred and are dismissed.[5]

Sash also brings her claims for intentional and negligent infliction of emotional distress against the United States and individual probation officers pursuant to the FTCA.  Under § 1346(b), only the United States, not individual government employees, can be liable "for injury or loss of property . . . caused by the negligent or wrongful act or omission or any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b).  The "remedy against the United States provided by sections 1346(b) . . . is exclusive of any other civil action . . . against the employee."  28 U.S.C. § 2679(b)(1) (2006).  Here, Sash's claims arise from actions taken by the probation officers while acting within the scope of their employment.  Because Sash can only bring these claims against the United States, her FTCA claims against the probation officers in their individual capacities are dismissed.

Having disposed of Sash's claims for emotional distress against the Closter Police Department, it's individual police officers, and the probation officers, the only remaining issue is whether Sash has pled sufficient facts to establish her emotional distress claims against the United States.  Upon reviewing the complaint and considering her statements at oral argument, it is clear that Sash has not, and can not, plead sufficient facts supporting her emotional distress

---

[5] Sash has separately to amend her complaint to add Closter Police Officer John McTigue.  Because these claims are time-barred, the motion is denied.  Even if the statute of limitations did not apply to bar the tort claims against the Closter Police Department and its officers, the Complaint does not allege sufficient facts to show that the officers failed to "act[] in good faith in execution or enforcement of any law."  *See* N.J.S.A. § 59:3-3.  They are therefore entitled to qualified immunity.  *See id.* ("A public employee is not liable if he acts in good faith in the execution or enforcement of any law.").

claims to "permit the court to infer more than the mere possibility of misconduct." *See Iqbal*, 129 S. Ct. at 1950. Accordingly, her claims for intentional and negligent infliction of emotional distress are dismissed.

        1)   *Intentional Infliction of Emotional Distress*

Under New Jersey law, in order to establish a claim for intentional infliction of emotional distress the "plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (1988). Here, Sash has only pled that the probation officers were not authorized to take her belongings, that she was not a party to her husband's supervised release agreement, and that she did she did not consent to the search. (Am. Compl. ¶¶ 19–21.) She has not pled that any of the Government's actions were outrageous or that the officers intended for her to suffer emotional distress. The probation officers had the authority to search her home pursuant to her husband's supervised release agreement and only conducted the search after he admitted possessing prohibited items in his home. Although the Complaint alleges the probation officers were wearing guns, there is no suggestion that the officers acted in an outrageous way in entering the house or conducting the search.

Even if Sash's complaint could be construed to allege outrageous or intentional conduct, it fails to allege the third element because Sash does not have "distress that is severe." *See Buckley*, 111 N.J. at 366. Sash claims that the Defendants' actions caused loss of sleep, appetite, and loss of trust in the police. (Am. Compl. ¶ 2.) These claims are not "so severe that no reasonable man could be expected to endure it." *Buckley*, 111 N.J. at 366. Therefore, Sash's claim for intentional infliction of emotional distress is dismissed.

2)  *Negligent Infliction of Emotional Distress*

An independent tort action for negligent infliction of emotional distress can arise in two instances.  *See Jablonowska v. Suther*, 195 N.J. 91, 104 (2008).  The first instance occurs when a person directly observes the death or serious injury of a family member or other intimate person.  *Id.*  Second, a "plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness."  *Id.*; *see also Falzone v. Busch*, 45 N.J. 559, 569 (1965).  Here, Sash only alleges that she was afraid of being knocked over and feared for her children.  (Am. Compl. ¶ 23.)  She claims she suffered loss of appetite and sleep as a result.  Neither of these constitute a "substantial sickness" because they are not "so severe that no reasonable man could be expected to endure it."  *Jablonowska*, 195 N.J. at 103; *Buckley*, 111 N.J. at 367.  Therefore, Sash's claim for negligent infliction of emotional distress is dismissed.

Typically, leave to file an amended complaint shall be "freely given when justice so requires."  Fed.R.Civ.P. 15(a).  However, the Court need not grant leave to amend when such an amendment would be futile.  *See Grayson v. Mayview State Hosp*., 293 F.3d 103, 108 (3d Cir. 2002).  "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss."  *Jablonski v. Pan Am. World Airways, Inc*., 863 F.2d 289, 292 (3d Cir. 1988).  Such is the case for each of Sash's claims.  First, her § 1983, *Bivens*, and NJTCA claims are time-barred.  Second, the probation officers benefit from qualified immunity.

Third, it is clear that Sash cannot plead sufficient facts to satisfy the elements for her claims for intentional or negligent infliction of emotional distress.  Accordingly, the Motions are GRANTED and the Complaint is DISMISSED WITH PREJUDICE.

**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**